IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE WHOLESALE NURSERY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:12-cv-00937 |
| | ) | |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Griffin |
| WILSON TRUCKING CORP., | ) | |
| | ) | JURY DEMAND |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant Wilson Trucking Corporation's Motion for Summary Judgment ("Motion") (Doc. No. 26), to which Plaintiff Tennessee Wholesale Nursery has not responded. For the reasons below, Defendant's Motion is **GRANTED**.

I. BACKGROUND

*A. Factual Background*[1]

Plaintiff Tennessee Wholesale Nursery operates as a wholesale plant nursery, selling trees, shrubs, roots, and other plants to locations across the country. (Doc. No. 1-1.) Defendant Wilson Trucking Corporation is a licensed motor carrier that transports cargo shipments throughout the United States.

During the course of their relationship, Defendant transported 67 cargo shipments on behalf of Plaintiff. Plaintiff alleges that four shipments were damaged in transit. Specifically, Plaintiff claims damage to two shipments of trees or tree roots sent to Hatchee Coon Hunting and Fishing Club ("Hatchee") in Arkansas, one shipment of trees or tree roots sent to Autumn Daze

---

[1] Unless otherwise indicated, the facts in this section are taken from Defendant's Statement of Undisputed Material Facts (Doc. No. 28.) Pursuant to Local Rule 56.01(g), the Court assumes these facts undisputed as Plaintiff has failed to respond to Defendant's statement of facts.

1

Nursery in Oregon, and one shipment of trees or tree roots shipped to West Mountain Farm in Utah.

Defendant picked up the first Hatchee shipment on November 15, 2011, and delivered it on November 17, 2011. (Doc. No. 26-3.) The Proof of Delivery, which stated "ABOVE SHIPMENT RECEIVED IN GOOD CONDITION EXCEPT AS NOTED," was signed by Hatchee representative Tom Miller and did not note any damages to the shipment. (*Id.*)

Defendant picked up the second Hatchee shipment on November 21, 2011, and delivered it on November 30, 2011. (Doc. No. 26-4.) The Proof of Delivery, which stated "ABOVE SHIPMENT RECEIVED IN GOOD CONDITION EXCEPT AS NOTED," was signed by Hatchee representative Helen Chaffin and did not note any damages to the shipment. (*Id.*)

Defendant picked up the Autumn Daze shipment on December 30, 2011, and delivered it. (Doc. No. 26-5.) The Proof of Delivery, which stated "RECEIVED IN GOOD CONDITION EXCEPT AS NOTED," was signed by Autumn Daze representative James Wanless and did not note any damages to the shipment. (*Id.*)

Defendant picked up the West Mountain Farm shipment on April 4, 2012, and transported it to Georgia en route to Utah. The shipments at issue were contracted between the parties pursuant to four separate bills of lading, each of which were filled out by Plaintiff and contain two places to declare the value of the goods being shipped. Plaintiff, however, did not declare values for any of the shipments. (Doc. No. 26-2.) The bills of lading also state that Defendant's carrier liability is subject to "released values" as provided in Defendant's tariff and that a liability limitation for loss or damage might be applicable, pursuant to 49 U.S.C. § 14706(c)(1)(A) & (B). (*Id.*) The bills of lading state that the shipments were received "subject to individually determined rates or contracts that have been agreed upon in writing between the

carrier and shipper, if applicable, otherwise to rates, classifications and rules that have been established by the carrier and are available to the shipper upon requests." (*Id.*) Further, the bills of lading explicitly state that they are subject to the terms and conditions of Defendant's Tariff 100. (*Id.*) The bills of lading for the shipments, however, did not contain any instructions regarding required delivery dates.

On the dates of the shipments, several tariffs were in effect, including Defendant's Tariff 100-Q (Doc. No. 26-6), and Rate Publication Tariff 651 (Doc. No. 26-7). Tariff 100-Q exempts Defendant from liability for damages resulting from delays in shipments. (Doc. No. 26-6 at 41.) Rate Publication Tariff 651 specifically states that "carrier liability will be for the invoice value of the commodity but not to exceed $2.00 per pound." (Doc. No. 26-7 at 2.) Plaintiff was informed of and agreed to Rate Publication Tariff 651, and in return obtained discounted freight rates for the Shipments. (*See* Doc. No. 26-1 ¶ 14.)

*B. Procedural Background*

Plaintiff filed a Complaint in the General Sessions Civil Court for Wilson County, Tennessee, seeking damages for Defendant's alleged failure to timely transport goods under its contracts with Plaintiff. (Doc. No. 1-1.) On September 12, 2012, Defendant filed a Notice of Removal with this Court. (Doc. No. 1.) On November 13, 2012, Plaintiff filed a Motion to Remand (Doc. No. 13), which the Court subsequently denied, finding Plaintiff's state law claims were completely preempted by federal law (Doc. No. 31 at 7).

On September 19, 2012, Defendant filed a Motion to Dismiss (Doc. No. 5), to which Plaintiff did not respond and the Court subsequently denied on September 17, 2013 (Doc. No. 32). On June 25, 2013, Defendant filed the instant Motion (Doc. No. 26), with a Memorandum in Support (Doc. No. 27), a Statement of Undisputed Material Facts (Doc. No. 28), and several

3

exhibits (Doc. Nos. 26-1 to 26-7; 27-1). To date, Plaintiff has failed to respond to Defendant's Motion.

## II. LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The non-moving party must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330–31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable fact-finder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility

4

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable fact-finder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

Where the non-moving party fails to respond to a motion for summary judgment, "[t]he court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that [the movant] has discharged . . . the burden of demonstrating the absence of a genuine issue as to a material fact." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (quoting *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991)). However, "a non-moving party's failure to respond to a motion 'indicates that there is no opposition to the motion,'" *Dunn v. McDonald's Corp.*, No. 3:10-0055, 2010 WL 2696508, at *2 (M.D. Tenn. July 7, 2010) (quoting M.D. Tenn. L.R. 7.01(b)) (internal brackets omitted), and "the failure to respond to a statement of facts filed in support of a motion for summary judgment 'shall indicate that the asserted facts are not disputed for the purposes of summary judgment,'" *Id.* (quoting M.D. Tenn. L.R. 56.01(g)).

## III. ANALYSIS

Defendant argues: (1) Defendant's liability is limited to $2.00 per pound for cargo damages, as provided in Tariff 100-Q and rate Publication Tariff 651; (2) Defendant is liable to Plaintiff for damage to the West Mountain Farm Cargo shipment in the amount of $300.00, based on the $2.00 per pound liability rate; (3) Defendant is not liable for damage to the Hatchee or Autumn Daze shipments; (4) in the alternative, should the Court find Defendant liable for the full value of any cargo shipments allegedly damaged in transit, Defendant is entitled to recover $22,225.09 on its counterclaim for the undiscounted freight rates for all shipments made on behalf of Plaintiff

plus the administrative fee and penalty provided in Tariff 100-Q. The Court addresses Defendant's arguments in turn.

   *A. Defendant's Liability for Shipments Made on Behalf of Plaintiff*

As a threshold issue, Defendant argues that all of Plaintiff's claims are governed by the Carmack Amendment, 49 U.S.C. § 14706, et seq. based on the fact that all contracted shipments were for cargo to be transported in interstate commerce. (Doc. No. 27 at 5–6.) The Court previously determined that the Carmack Amendment "provides the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." (*See* Doc. No. 31 at 5 (quoting *Solectron USA, Inc. ex rel. Fid. & Deposit Co. of Md. v. Fedex Ground Package Sys., Inc.*, 520 F. Supp. 2d 904, 909 (W.D. Tenn. 2007)).) The Carmack Amendment imposes liability on interstate motor carriers for "the actual loss or injury to the property" caused by a carrier to property transported under a bill of lading. 49 U.S.C. § 14706(a)(1) (2012). However, the statute also provides that carriers may arrange with the shipper to limit liability to "a value established by written . . . declaration of the shipper or by written agreement between the carrier and shipper." *Id.* § 14706(c)(1)(A).

Here, all shipments at issue were contracted to be transported from Tennessee to other states and thus, in interstate commerce. Therefore, the Court finds the Carmack Amendment governs all claims in this case and Defendant is liable for the actual loss or injury to any cargo shipments that were in fact damaged, unless Defendant limited it's liability pursuant to 49 U.S.C. § 14706(c)(1)(A).

Pursuant to the Carmack Amendment, to limit liability to less than the actual value of lost or damaged goods, a carrier is required simply to, on request of the shipper, provide a copy of the rate, classification, rules, and practices upon which the liability rate is based. *Id.* §

6

14706(c)(1)(B); *see Racing Head Svc., LLC v. Mallory Alexander Int'l Logistics, LLC*, No. 09-2604-STA-tmp, 2012 WL 174862, at *20 (W.D. Tenn. Jan. 20, 2012). In addition, when a shipper fills out a bill of lading signed by both the shipper and carrier, which makes reference to a liability-limiting tariff provision, the tariff in enforceable against the shipper. *EFS Nat'l Bank v. Averitt Exp., Inc.*, 164 F. Supp. 2d 994, 1001 (W.D. Tenn. 2001) (citing *Siren, Inc. v. Estes Exp. Lines*, 249 F.3d 1268, 1271–73 (11th Cir. 2001)).

Here, it is undisputed that the bills of lading for the shipments at issue were filled out by Plaintiff's employees, who failed to complete the sections listing the declared value of the goods. (Doc. No. 28 ¶¶ 12, 15.) The bills of lading contained language explaining that Defendant's liability might be limited pursuant to 49 U.S.C. § 14706(c)(1)(A) & (B) and Defendant's tariff. (*See* Doc. No. 26-2.) The bills of lading also stated that all shipments were "RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to rates, classifications and rules that have been established by the carrier and are available to the shipper upon request." (*Id.*) In addition, Defendant's Tariff 100-Q and Rate Publication Tariff 651 were in effect on the dates of the shipments at issue in this case, which limited Defendant's liability to no more than $2.00 per pound. (*See* Doc. Nos. 26-6; 26-7; 28 ¶ 19.) It is also undisputed that, in exchange for limiting its liability, Defendant provided Plaintiff reduced, discounted freight rates as provided for in Rate Publication Tariff 651. (Doc. No. 28 ¶ 18.) Based on the foregoing, the Court finds Defendant's liability to Plaintiff for the shipments in question was limited to $2.00 per pound for actual loss or damage to the property being shipped.

B. *Defendant's Liability for the West Mountain Cargo Farm Shipment*

Defendant concedes that its shipment of Plaintiff's goods to West Mountain Farm in Utah was damaged in transit. (Doc. No. 27 at 9.) However, Defendant argues its liability was limited by Rate Publication Tariff 651 to $2.00 per pound, amounting to $300.00 total for the West Mountain Farm shipment which weighed 150 pounds. (*Id.*; Doc. No. 26-2 at 4.) Based on the Court's finding that Defendant's liability for the shipments at issue was limited pursuant to its tariffs and the bill of lading for the West Mountain Farm shipment, describing the cargo as weighing 150 pounds, the Court finds Defendant's liability to Plaintiff for this shipment is $300.00.

*C. Defendant's Liability for the Hatchee and Autumn Daze Shipments*

Defendant argues it is not responsible for any alleged damages to Plaintiff's cargo shipped to Hatchee or Autumn Daze. (Doc. No. 27 at 11–12.) Defendant states that, as evidenced by the delivery receipts signed by representatives of Hatchee and Autumn Daze for each of the three shipments at issue, the cargo in each shipment was received in good condition with no exceptions noted. (Doc. Nos. 26-3 to 26-5; 27 at 10.) Further, Defendant argues that Plaintiff's allegation—that the damage to shipments was a result of Defendant's "failing to timely transport"—is not a valid basis for liability because (1) Defendant's tariff precludes liability for damage resulting from delay in delivery and (2) the bills of lading that correspond to these three shipments did not contain any shipping instructions regarding delivery dates. (Doc. No. 27 at 11.)

Defendant's Tariff 100-Q states "[a]t no time shall Wilson Trucking Corporation be held liable for any special, incidental or consequential damages of any kind or nature, including but not limited to delay, loss of profits, loss of use, interruption of business, loss of income, interest (finance) charges, or loss of market." (Doc. No. 26-6 at 41.) In examining the bills of lading for

8

the two Hatchee shipments and the Autumn Daze shipment, the Court finds no instructions regarding delivery dates. (Doc. No. 26-2 at 1–3.) By contrast, the bill of lading for the West Mountain Farm shipment contains a handwritten instruction stating "Guaranteed 2 day Del." (*Id.* at 4.) Because Defendant's Tariff 100-Q was in effect at the time of the shipments at issue, and there is no evidence that the parties agreed to any terms regarding timing of delivery for the two Hatchee shipments and the Autumn Daze shipment, the Court finds Defendant was not liable for damages due to delay in its delivery of the shipments. Further, as the delivery receipts for the same shipments were each signed without any indication as to defects in the cargo received, the Court finds Plaintiff has failed to establish that Defendant is responsible for any alleged damages with respect to the two Hatchee shipments and the Autumn Daze shipment.

*D. Defendant's Counterclaim for Undiscounted Freight Rates Owed*

Defendant argues that, should the Court find it is liable for the full value of any of Plaintiff's cargo shipments, it is entitled to recover from Plaintiff $22,225.09. (Doc. No. 27 at 11–14.) Defendant states this amount represents the difference between the reduced, discounted freight rates Plaintiff received for the 67 shipments Defendant carried and the administrative fee and penalty for Defendant having to institute legal action to collect payments owed, as provided for in Defendant's tariff. (*Id.* at 12–13.) Because the Court has not found Defendant liable for the full value of any of Plaintiff's cargo shipments, the Court finds Defendant's counterclaim is moot.

## IV. CONCLUSION

In sum, Defendant has provided evidence that no dispute of material fact exists in this case and that it is entitled to judgment as a matter of law. Plaintiff failed to respond to

Defendant's Motion, and thus, has failed to raise a genuine issue of material fact with respect to Defendant's liability for the four shipments at issue in this case.

Specifically, Defendant has presented evidence that its liability to Plaintiff for actual loss or damage to shipments was limited by the terms in its tariffs and that it is only responsible for actual loss or damage to Plaintiff's cargo in the West Mountain Farm shipment, in the amount of $300.00. Plaintiff has failed to bring forth any evidence to challenge Defendant's contentions. Therefore, the Court finds Defendant has carried its burden of proof to prevail on its Motion for Summary Judgment and accordingly, the Court **GRANTS** the Motion. This Order terminates the Court's jurisdiction over this case, and the case is **DISMISSED**.

It is so ORDERED.

Entered this the \_\_\_25th\_\_\_ day of October, 2013.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT